# PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**   JUNE 8, 2017
PELTON@PELTONGRAHAM.COM

**VIA ECF**

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  *Daniel Cohetero v. Stone & Tile Inc., et al.*
>      **Civil Action No. 16-cv-04420 (KAM)(SMG)**

Dear Judge Matsumoto:

We represent the Plaintiff Daniel Cohetero ("Cohetero" or "Plaintiff") in the above-referenced matter. This letter is submitted pursuant to the Fair Labor Standards Act (FLSA) and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.  Introduction**

Plaintiff Cohetero worked as a marble cutter and polisher at Defendants' masonry supply business. On May 27, 2016, Plaintiff, through his counsel, issued a letter demand for payment of back wages, including a damages analysis based on Plaintiff's best estimates of hours worked and wages paid, to Defendants Lazer Mechlovitz ("L. Mechlovitz") and Nachman Mechlovitz ("N. Mechlovitz" and, together with L. Mechlovitz, the "Individual Defendants") and corporate entity Lazer Marble & Granite Corp. Plaintiff's demand letter was delivered to Defendants' principal place of business at 1053 Dahill Road, Brooklyn, New York 11204, on May 31, 2016. On June 29, 2016, Lazer Marble & Granite Corp. was dissolved by proclamation and is no longer an active corporation.

Plaintiff commenced this Action by filing a Collective Action Complaint (Dkt. No. 1, the "Complaint") on behalf of himself and similarly situated employees of Defendants on August 8, 2016, seeking unpaid overtime premiums pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the New York Labor Law ("NYLL") § 650 *et seq.*, as well as damages for wage notice and wage statement violations pursuant to the NYLL. Shortly after serving Defendants, Plaintiff's counsel was contacted by Defendants' accountant, Alan Feinsilber, C.P.A.,

who expressed an interest in resolving the matter for Defendants. After several weeks of attempting to make progress towards resolution, including an in-person meeting with Mr. Feinsilber, Plaintiff filed a Request for Certificate of Default on December 20, 2016. (Dkt. No. 12). The Clerk entered default on February 15, 2017. (Dkt. No. 13). After additional settlement discussions following the Clerk's entry of default, the parties ultimately reached a settlement of the Action on an individual basis for Plaintiff Cohetero.

## II. The Settlement Accounts for Litigation Risk and Compensates Plaintiff for Substantial Damages

Throughout this litigation, the Parties have had several major points of contention. First, the Parties disputed the number of hours that Plaintiff worked each week. Plaintiff Cohetero alleges that he typically worked six (6) days per week, for a total of fifty-six to fifty-eight (56-58) hours per week. Plaintiff's wage claims were based on Plaintiff's allegations that he was paid nine dollars and fifty cents ($9.50) for all hours for which he received compensation and thus did not receive overtime premiums for hours worked in excess of forty (40) in a given workweek. Plaintiff further alleges that he was paid entirely in cash in an envelope and was never provided a wage statement indicating the number of hours that he worked during the week, his regular wage rate and/or his overtime rate. Defendants denied these allegations and disputed Plaintiff's assertions that he was not properly paid. Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after significant discovery and motion practice, if not a trial. Based on these disputes, the parties engaged in good-faith, arm's-length settlement negotiations regarding not only Plaintiff's FLSA claims, but also his pendent state law claims.[3]

As stated above, Plaintiff's counsel created an initial damages analysis, based on Cohetero's best estimates of hours worked and wages paid. Plaintiff's analysis, which assumes that Plaintiff worked an average of fifty-seven (57) hours per week from the beginning of the statutory period to January 21, 2016, calculated $23,757.80 in "actual" unpaid overtime wages. Thus, the settlement amount (i.e., $22,500.00) represents nearly full recovery of the actual unpaid wages calculated from Plaintiff's analysis. The Parties believe that this is a fair recovery based on the risks associated with establishing the calculated damages and the risks attendant with proceeding to a trial.

## III. Settlement Terms

As set forth in the attached Settlement Agreement, the Parties have agreed to settle this action for a total settlement amount of $22,500.00 (the "Settlement Amount"). Of that amount, $8,213.26 is payable to Plaintiff's counsel, representing $1,069.90 in expenses for counsel's costs for filing and service of the complaint, plus one-third (33.33%) of the Settlement Amount, after subtracting those expenses (i.e. $7,146.36). The remaining $14,286.74 is payable directly to the Named Plaintiff (the "Net Settlement Amount").

---

[3] Such claims, of course, may be waived by private agreement. *Amaya v. Garden City Irrigation, Inc.*, 2011 U.S. Dist. LEXIS 15316, at *4-5 (E.D.N.Y. Feb. 15, 2011).

      The portion of the settlement amount that Plaintiff seeks as attorney's fees is less than the lodestar amount and is consistent with what was agreed upon between Plaintiff and his counsel in his retainer agreements and the consent to become party plaintiff form filed with the Court. The retainer agreement between Plaintiff and his counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs. Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

      Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release of claims for any claims arising before Plaintiff signed the Settlement Agreement. The Parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

      The Second Circuit in *Cheeks* questioned the propriety of an FLSA settlement agreement in another case that included: (1) "a battery of highly restrictive confidentiality provisions" (2) an overbroad release that would waive both current and future claims and (3) a fee for plaintiffs' attorneys of "between 40 and 43.6 . . . without adequate documentation to support such a fee award." The Settlement Agreement before Your Honor, however, (1) does not contain a restrictive confidentiality provision; (2) does not contain a release which is one-sided or is to be applied to future claims; and (3) the Plaintiff's attorneys' fees are standard. Most importantly, and unlike the settlement agreement at issue in *Cheeks,* the Settlement Agreement is available to Your Honor to explore and to assess whether it was likely the "fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel."[4]

## IV.    The Court Should Find That the Settlement Is Fair and Reasonable

      An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[5] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement).

      In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an

---

[4] *Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).
[5] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred. *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

    Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations over several months. As explained above, the settlement represents near full recovery of unpaid overtime wages under the FLSA and NYLL. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiff's ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations followed, culminating in a negotiated resolution.

    \*    \*    \*    \*    \*

    As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The Parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

    We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the Parties should you have any questions regarding this submission.

Respectfully submitted,

**PELTON GRAHAM LLC**

By: */s/ Brent E. Pelton*
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

*Attorneys for Plaintiff*